**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

DONGDONG HUANG,

    Plaintiff,

v.                                                        Case No. 10-12598

CONTINENTAL TIRE THE AMERICAS, LLC,

    Defendant.
                                                       /

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S
AMENDED MOTION TO COMPEL DISCOVERY AND
GRANTING JOINT MOTION TO EXTEND DEADLINE**

Plaintiff has moved to compel Defendant to respond to certain interrogatories and requests for production. Fed. R. Civ. P. 37(a)(3)(B). The parties have jointly moved to extend certain discovery deadlines. The court heard argument on Plaintiff's motion June 27, 2011. For the reasons that follow, the court will grant in part and deny in part Plaintiff's motion, and will grant the motion to extend.

**I. BACKGROUND**

This case is a product liability action that arose after the driver's side rear tire of Plaintiff's Nissan Quest allegedly blew out in 2007, and he claims negligent manufacture, negligent design, breach of implied warranty of fitness, and gross negligence. The tire at issue, a "General Tire" brand "Ameri*GS60," was designed and manufactured by Defendant. The tire was manufactured in March 1999 at Defendant's plant in Mount Vernon, Illinois.

The case was filed in June 2010, and the parties have been engaged in discovery since September 2010. Since that time, the parties have moved for a protective order, and Plaintiff has moved to extend the scheduling order deadlines, for an order establishing a tire inspection protocol, to modify the protective order,[1] and twice to compel (including the pending motion).

## II. STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

The broad reach of Rule 26(b)(1) is tempered by Rule 26(b)(2)(C), which mandates the court to limit discovery if the discovery sought "is unreasonably cumulative or duplicative," can be obtained from another, more economical source, if the discovery seeker already had a chance to obtain the information, or if the cost-benefit analysis disfavors production when properly placed in the context of the case. In addition, for good cause a court may "requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G).

> "It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure

---

[1] The court issued a protective order in the form proposed by Defendant. (2/18/11 Protective Order 6.)

2

> by means of a protective order are also a matter within the trial court's discretion."

*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 269 (6th Cir. 2010) (quoting *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 326 (10th Cir. 1981)).

"Relevant" in the context of the rules of discovery is necessarily broader than "relevant" as that term is used in the rules of evidence. *See EEOC v. Konica Minolta Bus. Solutions U.S.A., Inc.*, 639 F.3d 366, 369 (7th Cir. 2011); *NLRB v. New England Newspapers, Inc.*, 856 F.2d 409, 414 n.4 (1st Cir. 1988). But any analysis of what types of information are reasonably likely to lead to the discovery of admissible evidence begins with a determination of that which would be admissible; the admissibility inquiry, in turn, begins with evidentiary relevance. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Thus, to determine whether a discovery request will yield relevant evidence, or information that is likely to lead to the discovery of relevant evidence, the court must look to the elements of the cause of action.

As noted above, the complaint alleges two product liability claims under Michigan law—negligent manufacture and negligent design—as well as breach of implied warranty of fitness and gross negligence. "To prove a manufacturing defect claim, a plaintiff must establish a causal connection between the claimed defect and the harm done." *Am. & Foreign Ins. Co. v. Gen. Elec. Co.*, 45 F.3d 135, 139 (6th Cir. 1995) (citing *Caldwell v. Fox*, 231 N.W.2d 46, 50-51 (Mich. 1975)).

> To prove a design defect under Michigan law, a plaintiff must show that the product was "not reasonably safe for its foreseeable uses" and that a

> "risk-utility analysis" favored a safer design. Under this approach, a plaintiff must show that (1) the product was not reasonably safe when it left the control of the manufacturer; and (2) a "feasible alternative production practice was available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users."

*Croskey v. BMW of N. Am., Inc.*, 532 F.3d 511, 515-16 (6th Cir. 2008) (quoting Mich. Comp. Laws § 600.2946(2)). "'[The] risk-utility balancing test . . . considers alternative safer designs and the accompanying risk pared [sic] against the risk and utility of the design chosen.'" *Bouverette v. Westinghouse Elec. Corp.*, 628 N.W.2d 86, 90 (Mich. Ct. App. 2001) (editorial mark in original) (quoting *Gregory v. Cincinnati, Inc.*, 538 N.W.2d 325 (Mich. 1995)). Next,

> [w]hen a products liability action is premised on a breach of implied warranty of fitness, the plaintiff must prove that a defect existed at the time the product left the defendant's control, which is normally framed in terms of whether the product was reasonably fit for its intended, anticipated or reasonably foreseeable use.

*Id.* (internal quotation marks omitted). The risk-utility test is also incorporated into the breach of implied warranty analysis. *See Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000); *see also Bouverette*, 628 N.W.2d at 90 (citing *Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1984)) (explaining that negligence and breach of implied warranty causes of action, while distinct, involve the same elements and proofs in certain design defect cases).

If a defendant was grossly negligent, as asserted by Count IV of the amended complaint, the cap on noneconomic damages for death or permanent loss of a vital bodily function is inapplicable. Mich. Comp. Laws § 600.2946a. "'Gross negligence'

means conduct so reckless as to demonstrate a substantial lack of concern for whether injury results."  Mich. Comp. Laws § 600.2945(d).

### III. DISCUSSION

The motion seeks compliance with four interrogatories (numbers 1, 3, 4, and 6) and three requests for production (numbers 1, 3, and 4).  The court will follow Plaintiff's lead in discussing Interrogatory 1 and Requests for Production 1 and 3 as relating to "eyewitnesses to manufacturing conditions and practices," Interrogatories 3 and 4 as relating to "alternative tire designs," Request for Production 4 as relating to "prior claims involving the same failure mode of tires made at the same plant," and Interrogatory 6 as relating to "discovery from cases Mr. Huang's counsel and expert have already reviewed."

### A. Eyewitnesses to Manufacturing Conditions and Practices

Interrogatory 1 seeks information about former or current employees of Defendant who were "responsib[le] for making or inspecting passenger car tires at Continental's Mount Vernon, Illinois plant in March or April of 1999."  (Mot. Br. 9.)  Request for Production 1 seeks "job training material and the criteria . . . used" by the employees referenced in Interrogatory 1 "when performing their jobs."  (*Id.*)  Plaintiff has agreed to limit this first Request for Production to documents on certain specified subject matter.  (*Id.* at 10.)  Request for Production 3 seeks existing "affidavits, signed statements, trial testimony, and depositions" of those with first-hand knowledge of the conditions at the Mount Vernon plant between March 1994 and March 2004.  (*Id.* at 9-10.)  The motion avers Plaintiff is also willing to limit the reach of Request for Production

3 to only ten depositions, as well as a "privilege log type list of any other materials" responsive to the request.[2]  (*Id.* at 11.)

Defendant argues that it offered to produce a Mr. Stowers for deposition in response to these discovery requests, and Defendant represents that Mr. Stowers is "knowledgeable about these areas." (Resp. Br. 3.)  It says that the requests are not appropriately limited in scope because the requests relate to all employees at the plant during the relevant time period regardless of the type of tire on which those employees were working.  (*Id.* at 7, 12.)  Defendant contends these requests are unduly burdensome, Plaintiff has not shown necessity, and contrary to Plaintiff's assertion, Defendant has not claimed a privilege.  (*Id.* at 12-18.)

The court will grant Plaintiff's motion with respect to these three discovery requests, but with caveats.  Defendant will be required to produce the list of employees sought in Interrogatory 1, the documents sought by Request for Production 1 that are related to innerliner splicing and placement, belt splicing and placement, and the final finish cured tire inspection process, and no more than ten depositions in response to Request for Production 3.  Defendant will not be required to submit any log of additional documents in its possession.

This resolution is in accordance with Rule 26.  Defendant's claims of overbreadth are overstated.  Plaintiff's suit alleges negligence in the design and manufacture of tires in March 1999.  Therefore, the conditions of the Mount Vernon plant will clearly be

---

[2] On pages 10 and 11 of his brief, Plaintiff refers to "Request for Production 1 and 2."  However, on page 9, Plaintiff labeled the requests at issue as 1 and 3.  The court therefore assumes the latter references are erroneous, and that Plaintiff intends to reference Request for Production 3 rather than 2 on pages 10 and 11.

relevant, for example, to a determination of whether Defendant was negligent or grossly negligent in manufacturing Plaintiff's tire.  Moreover, Rule 26(b)(1) allows discovery into information that is broader than that which will be admissible at trial; it permits discovery into that which is "reasonably calculated to lead to the discovery of admissible evidence."  A list of employees who worked at the Mount Vernon plant is, in fact, reasonably calculated to lead to the discovery of evidence that very likely would be admissible at a trial, regardless of whether each employee worked on the particular model of tire at issue here, because the statements of those employees may either be or lead to sources of admissible evidence.  And production of that list, while perhaps burdensome, is not *unduly* burdensome.  In fact, it may well be *less* burdensome to produce a complete list of employees of the plant in March and April 1999 than it would be to sort through the list to determine which employees had any connection with the tire model at issue.

Defendant's offer to produce for deposition a single employee who is knowledgeable about the type of information sought in Interrogatory 1 is insufficient to meet Defendant's discovery obligations.  As in any case, Plaintiff is entitled to interview and depose multiple witnesses to events relevant to his case in search of evidence in support of his claims.  Defendant is in possession of the names of those witnesses, and may not cherry pick a single employee as the definitive source of information relevant to this issue.[3]

---

[3] The strictures of Rule 33(b), governing responses to interrogatories, are not satisfied by the designation of a Rule 30(b)(6) witness.

Similarly, the training materials and criteria used when Defendant's employees manufactured tires in March or April 1999 may also be relevant—or lead to the discovery of evidence relevant—to Plaintiff's claim of negligent manufacture. The court also finds that Defendant has not shown that the production of these materials would be unduly burdensome, for the same reasons stated above. To the extent that these materials constitute the class of information covered by Rule 26(c)(1)(G), the court finds that the protective order—which was drafted by Defendant's counsel—is sufficient to protect Defendant's interests.

Finally, the court thinks it not unduly burdensome to produce ten depositions from plant employees that have already been created in the course of other litigation and may be relevant here. Such a request is reasonable, and may avoid additional costs associated with re-deposing such employees in this matter. By contrast, the court finds it would be unduly burdensome to require Defendant to produce a log of all such materials in its possession, which would likely lead to Plaintiff filing yet another motion to compel the production of more of these documents. The list of employees, along with their training materials, and no more than ten depositions, will be sufficient to allow Plaintiff's case to proceed without placing an undue burden on Defendant, weighing the likely benefit of any additional discovery against the burden and expense of it.

### B. Alternative Tire Designs

Interrogatories 3 and 4 relate to Plaintiff's attempt to discover information about alternative tire designs, as Plaintiff, in pursuing his breach of implied warranty and design defect claims, bears the burden of showing there was a reasonable and

practicable alternative design that would have reduced the foreseeable risk of harm when the tire was manufactured. *See Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 738 (6th Cir. 2000). Interrogatory 3 seeks a list of all tires of a certain class ("P215/70R15" tires)[4] made by Defendant from January 1999 to the present, which list must contain information regarding whether those tires were reinforced with nylon. (Mot. Br. 14.) Interrogatory 4 asks for a list of all tires made by Defendant in March 1999 that meet certain size requirements, and also information about the nylon reinforcements in those tires. (*Id.*)

Defendant again argues that such information is irrelevant, and also states it has offered to stipulate to the feasibility of a nylon reinforcement design. (Resp. Br. 12-18.) Defendant adds that the interrogatories are directed toward information regarding dissimilar tires, and the production of the lists would be unduly burdensome. (*Id.*)

The court again disagrees with Defendant. A feasability stipulation is no substitute for the list of tires sought by Plaintiff, just as the deposition of a hand-picked witness is no substitute for a list of employees. This is because while the stipulation will allow Plaintiff to argue to the jury that there were alternative tire designs that were *possible*, that is not the only fact Plaintiff may wish to prove at trial. For example, Plaintiff may need to show that not only was the design feasible, but that Defendant used the alternative design for other tires, which is relevant to Michigan's "risk-utility" analysis. Stated differently, the lists of tires may show not only what was possible, but

---

[4] The "P" denotes a class of passenger tires. "215" indicates the cross-sectional tire width in millimeters. "70" is the aspect ratio of the height of the sidewall of the tire to the total width. "R" means the tire is a radial tire. "15" is the size of the rim in inches that the tire is designed to fit.

9

what Defendant knew or should have known was practicable or superior.  Therefore, the feasability stipulation is insufficient to obviate Plaintiff's need for requested discovery.

Nor does the court think that producing a list of tires is unduly burdensome, as the burden and expense does not outweigh the likely benefit.  Defendant claims that complying with the interrogatory will require "reviewing tens of thousands of pages of specifications, which could potentially require multiple employees to work several hundreds of hours."  (Resp. Br. 13.)  This may be so.  As a provisional resolution, the court will limit Interrogatory 3 to a list of the specifications of those Ameri*GS60 tires produced during the production run of the original equipment tires distributed for the Nissan Quest.  At the hearing, counsel advised that the run lasted from approximately 1998 until 2002, and since the interrogatory seeks only tires made from January 1999 on, the relevant time period will be from that month until the end of the run.  The court is mindful of counsels' averment that the Ameri*GS60 name encompasses more than the tires produced from the "common green" used for the batch of Ameri*GS60 tires distributed to Nissan, which batch included the tire at issue here, and that the name covers specifications designed for other models, such as the Ford Windstar and Buick LeSabre.  These specifications must also be included in the list, but only those used up until the time that the production run for the specific tire at issue here terminated.  Interrogatory 4 is time-limited by its own terms, but the court will impose an identical tire-class restriction: Defendant will be required to list only those tires made in March 1999 and marketed under the Ameri*GS60 name.

This ruling is provisional, and after the parties have complied, Plaintiff is free to move the court for additional discovery if this initial list has not proven satisfactory, at

which time the court will weigh the benefit of additional discovery against the burden of production. Therefore, the court will grant in part and deny in part Plaintiff's motion with respect to these two interrogatories.

### C. Prior Claims

Next, Plaintiff seeks information about prior claims involving the same failure mode of tires made at the same plant. Interrogatory 6 requests a list of all claims of damage, injury, or death that resulted from a tire manufactured at the Mount Vernon plant between March 1994 and March 2004. (Mot. Br. 16.) Plaintiff argues that "'evidence of similar accidents in admissible to prove the existence of a particular defect, to prove causation, or to prove defendant's knowledge of the danger.'" (*Id.* at 15 (quoting *Lohr v. Stanley-Bostitch, Inc.*, 135 F.R.D. 162, 164 (W.D. Mich. 1991).) Defendant responds that the interrogatory is overly broad, irrelevant, involves dissimilar tires, and requests confidential information without a showing of necessity. (Resp. Br. 18-19.)

The court will grant in part and deny in part this part of the motion, imposing the same additional restrictions discussed in Part II.B, supra. Interrogatory 6 will be limited to those claims that resulted from an Ameri*GS60 tire manufactured at the Mount Vernon plant during the production run of the model of tire at issue here, from approximately 1998 to 2002, and further restricted to those claims that were filed (in a court, with the company, or in some other forum) by the date that this case was filed, June 30, 2010.

Defendant's attempt to avoid providing a full and fair answer to this interrogatory fails for reasons similar to those already stated above. First, the interrogatory seeks

information that is clearly relevant or reasonably calculated to lead to relevant evidence. As observed by Plaintiff and the *Lohr* court, similar claims made against Defendant may show the existence of a defect, causation, or knowledge of Defendant. Second, the request, as modified by the court in the discussion above, is reasonably limited in scope to reach only those claims concerning particular tires manufactured at a particular plant during a particular time period. Third, compiling a list of claims is not unduly burdensome. Finally, the court cannot see how the fact of litigation, and basic information that would likely be found in the public pleadings of that litigation, can constitute confidential information. To the degree that any such confidential information would be produced in response to the interrogatory, the protective order is sufficient to guard Defendant's interests.

### D. Discovery from Other Cases

Lastly, Plaintiff's Request for Production 4 seeks Defendant's documents and current and former employees' testimony from two other cases, *Albee v. Continental Tire North America Inc.*, No. S-09-1145 (E.D. Cal.), and *Lampe v. Continental General Tire, Inc.*, No. BC173567 (L.A. Cal. Sup. Ct.). (Mot. Br. 16-17.) Plaintiff's counsel is or was involved in those cases, and therefore avers that this discovery material would be relevant here.[5] (*Id.* at 17, 19.) Plaintiff has agreed to limit this request to the documents

---

[5] Plaintiff apparently needs the discovery produced in this case, although Plaintiff's counsel presumably has possession of the materials, because the protective orders in those other cases bar Plaintiff's counsel from using the materials here. Defendant has provided the court with a motion for sanctions filed in *Albee*, which argues that Plaintiff's counsel has violated the protective order in that case by his representations in filing the motion to compel in this one. (*See* Resp. Ex. E.) An untimely reply filed by Plaintiff informs that the motion was denied.

and testimony listed on the plaintiffs' trial exhibit lists and "proposed trial deposition cuts" in those cases.  (*Id.* at 19.)

Defendant argues that the tires at issue in *Albee* and *Lampe* are different from the tire at issue here, because those tires are of a different specification and size, and they were manufactured at a different time.  (Resp. Br. 7-8.)  Thus, Defendant says, the request involves dissimilar tires and is overbroad and irrelevant, and seeks confidential information.

Defendant again slices the matter too thin.  The discovery from those cases is clearly relevant.  Those cases involve tires manufactured at the Mount Vernon plant within ten years of the incident here.  If Plaintiff's theory of the case is one of systemic negligence at this plant over several years, then other cases involving different models of tires manufactured at the same plant are relevant to this action.  That the tires are different or the time separation between the manufacture of the tires too great is an argument for a motion in limine, or for the jury—not for the court in an effort to avoid discovery where the burden posed is de minimis.  Additionally, the protective order will adequately preserve the confidentiality of any information produced in response to this request for production.

Simply put, the evidence sought by Plaintiff is likely to be relevant or to lead to the discovery of relevant evidence.  Defendant, having prepared these materials for other litigation, has them on hand.  They must be produced here.

### E. Joint Motion to Extend

Finally, the parties have jointly moved the court to extend the previously set discovery deadlines to designate experts and to submit expert reports.  Given the

complexity of the case, the extensions sought are warranted.  Therefore, the court will grant the motion.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Plaintiff's "Amended Motion to Compel Discovery" [Dkt. # 35] is GRANTED IN PART AND DENIED IN PART.  It is GRANTED in that Defendant must respond to the four interrogatories and three requests for production that are the subject of the motion.  However, Defendant must comply with those interrogatories and requests only to the extent described above; namely, where Plaintiff has offered to limit the scope of an interrogatory or request, it is so limited.  The motion is DENIED in that Defendant is not required to produce a log in response to Request for Production 3.  In addition, Defendant must comply with the discovery requests only to the extent that those requests have been limited by the court in this opinion. Specifically, Defendant need produce information regarding the tires and prior claims only from the Ameri*GS60 specifications used during the production run of the tire at issue in this case, from approximately 1998 to 2002.  The list of prior claims need include only those filed as of June 30, 2010.  The denial is without prejudice to Plaintiff's right to return to the court to seek additional discovery regarding other tires or claims, at which time the court will weigh the likely benefit of such discovery against the burden it would place on Defendant.

IT IS FURTHER ORDERED that the parties' joint "Motion to Extend Deadline for Designation of Experts and Discovery Deadline" [Dkt. # 41] is GRANTED.  Plaintiff's expert designations and reports shall be due thirty days after Plaintiff's receipt of the signed transcripts of the depositions of Defendant's corporate representatives.

Defendant's expert designations and reports shall be due forty-two days after Plaintiff's expert deadline.

                                             s/Robert H. Cleland
                                             ROBERT H. CLELAND
                                             UNITED STATES DISTRICT JUDGE

Dated:  July 5, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, July 5, 2011, by electronic and/or ordinary mail.

                                             s/Lisa Wagner
                                             Case Manager and Deputy Clerk
                                             (313) 234-5522